IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

Cincinnati Insurance Company

      Plaintiff,

v.

Mountain States Mutual Casualty Company

      Defendant.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Cincinnati Insurance Company, through its attorneys, Walberg Allan, PLLC, submits this Complaint for Declaratory Relief in this matter as follows:

This is an action for declaratory relief brought pursuant to the provisions of Rule 57 of the Federal Rules of Civil Procedure.

## I.    THE PARTIES

1. Plaintiff Cincinnati Insurance Company (CIC) is a citizen of Ohio, with its principal place of business in Ohio. CIC is licensed to do business in the State of Colorado as an insurance company.

2. Mountain States Mutual Casualty Company (Mountain States) is a citizen of New Mexico, with its principal place of business in New Mexico. Mountain States is licensed to do business in the State of Colorado as an insurance company.

## II.     JURISDICTION AND VENUE

3.      This Court has proper subject matter jurisdiction.

4.      The amount in controversy in this action, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

5.      Jurisdiction in this matter is based upon diversity of citizenship under 28 U.S.C. §1332.

6.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to the claim occurred primarily in Colorado, the insurance policies in question were issued in Colorado, to a Colorado resident company, and the property concerned is in Colorado, and the events giving rise to this Complaint occurred in Colorado.

## III.     STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

7.      CIC seeks to secure relief from uncertainty and insecurity regarding the rights, status, and legal obligations of the parties hereto concerning whether Mountain States had duty to defend and indemnify Academy Roofing (Academy), CIC and Mountain States' mutual insured, in relation to a Third Party Complaint filed by KB Home Colorado, Inc. (KB Home) against Academy.

### a.     The Underlying Action

8.      Village West at Centennial Owners Association, Inc. filed a Complaint and Jury Demand (Exhibit A) naming several entities, including KB Home, as defendants, on September 25, 2013, in District Court, Arapahoe County, Colorado, styled *Village West at Centennial Owners Association, Inc. v. KB Home Colorado, et al*., Case No. 2013 CV 31232   (The Underlying Action).

9.      The Complaint in the Underlying Action sought damages for construction defects at a residential development known as Village West at Centennial, in the City of Centennial, Colorado (the Project).

10.     In turn, on November 22, 2013, KB Home filed a Third Party Complaint in the Underlying Action against several subcontractors, including Academy. (Exhibit B, Third Party Complaint)

11.     The Third Party Complaint against Academy asserted:

      a.      KB Home entered into one or more written agreements with Academy as an independent contractor for the performance of construction, consultant and/or design services at the project.

      b.      Academy agreed to properly perform its work in a good and workmanlike manner.

      c.      KB Home has been sued by the Association for various design and/or construction defects which have caused actual and resultant property damage, including loss of use in a continuous and progressive manner.

      d.      To the extent the defects are proven, the defects were caused by the unintentional or negligent acts and/or omissions of Academy and the other subcontractors.

      e.      If the Association's allegations are proven, Academy knew or should have known that the construction could result in the project not being constructed in a good and workmanlike manner, and that such construction could result in the residential project not likely complying with the applicable codes and that the project would not be fit and sound for its reasonably anticipated use.

    f.      The subcontractors knew or should have known the reasonable standard of care in Colorado.

    g.      The claims against the subcontractors in the Third Party Complaint relate only to and/or arise out of the homes or residential units, which were not subject to or insured by any "Wrap-Up" ("Wrap") policy of insurance procured by KB Home

12.    The Third Party Complaint identified five claims for relief against Academy, including: negligence; contribution pursuant to Colorado statute; breach of contract resulting in property damage; breach of contractual indemnity (asserting that Academy had an obligation to add KB Home as an additional insured during the period before the Wrap); and breach of contractual duty to defend (asserting that Academy had an obligation to add KB Home as an additional insured entitled to defense).

13.    In the Third Party Complaint, KB Home sought the following relief: a) KB Home's actual damages, cost of suit fees for experts, investigation costs, attorney's fees, pre- and post-judgment interest; b) Specific performance; c) Declaratory relief; d) Moratory damages; and e) Any other relief the Court deems just and proper.

    **b.**    **Academy's Insurers**

14.    On May 1, 2004, Mountain States issued a Commercial General Liability (CGL) policy (No. CPP008200402) to Academy for a period of one year.  (Exhibit C, CGL Policy 2004-2005)

15.    The Mountain States CGL policy was renewed the following three consecutive years, for the period up to and including May 1, 2008 under Policy Nos. CPP008200403, CPP008200404, and CPP008200405, respectively. (Exhibit D, CGL Policy 2005-2006; Exhibit E, CGL Policy 2006-2007; Exhibit F, CGL Policy 2007-2008)

16.     Upon information and belief, on May 1, 2008, Liberty Mutual (Liberty) issued a CGL policy to Academy for a period of one year.

17.     Upon information and belief, the Liberty CGL policy was renewed the following two consecutive years, for the period up to and including May 1, 2011.

18.     On May 1, 2011, CIC issued a CGL policy (EPP 013 40 68) to Academy for a period of one year.  (Exhibit G –Declaration Pages from 2011 CIC policy)

19.     The CIC CGL policy was renewed for following the consecutive two years, for the period up to and including May 1, 2014 under Policy No EPP 013 40 68. (Exhibit H - Dec Pages from 2012 and 2013 policies)

      **c.**      **The Insurers' Response to Tender**

20.     CIC and Liberty provided a shared defense to Academy in relation to Third Party Complaint.

21.     Mountain States declined to defend Academy Roofing in connection with the claims asserted by KB Home on the ground that the project was covered by a Wrap policy.  (Exhibit I - Letter of July 15, 2013)

22.     Mountain States maintained its declination of coverage on the basis of the Wrap exclusions even though the KB Home's Third Party Complaint asserts claims directly against various subcontractors, including Academy, pertaining to those units that were completed prior to Wrap coverage, and which are specifically alleged not to be covered by the Wrap coverage.

23.     Relying on the Wrap exclusions in its CGL policies, Mountain States continued to decline Academy's tender and refused to participate in settlement negotiations between KB Home and Academy, in the Underlying Action.

24.     CIC and Liberty carried Mountain States' percentage of the cost of Academy's defense and settlement with KB Home.

25.     By fully settling the claims against Academy, CIC paid more than their share of the loss.

26.     Mountain States has ignored CIC's attempts to negotiate reimbursement of Mountain States' share of Academy's defense costs and indemnification.

       **d.**      **Summary of the Dispute**

27.     CIC has no adequate remedy at law and requests that this Court terminate the uncertainty and controversy giving rise to this proceeding.

28.     Mountain States has an interest in this action, as its interests will be affected by the declarations sought in this case.

29.     There is a dispute between the parties as to whether the any of the allegations in the Third Party Complaint stated claims which were arguably or potentially within the coverage of the Mountain States policies, and not excluded in by the Wrap exclusions, so as to trigger Mountain States' duty to defend Academy.

30.     There is a dispute between the parties as to whether Mountain States was required to contribute to the defense and indemnification of Academy.

## IV.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR DECLARATORY RELIEF

**(Mountain States was obligated to defend based on the allegations within
the four corners of the Third Party Complaint)**

31.     CIC incorporates paragraphs 1 through 30 above.

32.     Under Colorado law, when an insurer refuses to defend its insured, determining whether the insurer had a duty to defend "is based solely on factual allegations contained in the underlying complaint." *Cotter Corp. v. American Empire Surplus Lines Ins. Co*., 90 P.3d 814, 827 (Colo. 2004)

33.     Also under Colorado law, "an insurer looks to the four corners of the complaint, together with the policy, to determine its right and duty to defend. *Bainbridge, Inc. v. Travelers Cas. Co. of Conn*., 159 P.3d 748, 750 (Colo.App. 2006); accord *United Fire & Cas. Co. v. Boulder Plaza Residential,* 633 F.3d 951, 960 (10th Cir. 2011).

34.     A determination of Mountain States' duty to defend Academy must be solely based on the four corners of the Third Party Complaint and the Mountain States policies.

35.     Comparing the Third Party Complaint with the provisions of Mountain States policies requires the conclusion that Mountain States had an obligation, at a minimum, to participate in the defense of Academy in the Underlying Action.

36.     Mountain States nevertheless refused to participate in the defense of Academy.

37.     As a result of Mountain States refusal to defend, CIC has incurred defense and indemnity costs in an amount greater than its share, and is entitled to recover a proportionate share of such costs from Mountain States.

## SECOND CLAIM FOR DECLARATORY RELIEF

### (The Third Party Complaint stated claims for "property damage" within the coverage grant of the Mountain States CGL policies)

38.     CIC incorporates paragraphs 1 through 37 above.

39.     Under Colorado law, an insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy. *Hecla Mining Co. v. N.H. Ins.* Co., 811 P.2d 1083, 1089 (Colo. 1991).

40.     The coverage grant in Exhibits C, D, E, and F, the 2004-2008 Mountain States CGL policies, provides in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.       Insuring Agreement**

  **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

  **b.**  This insurance applies to "bodily injury" and "property damage" only if:

    (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)   The "bodily injury" or "property damage" occurs during the policy period.

  \* \* \* \* \* \*

**SECTION V – DEFINITIONS**

**11.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.**     "Property damage" means:

  **a.**  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.**  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

41.     The Third Party Complaint asserts claims for "property damage" arising out of an "occurrence," within the definitions of the Mountain States CGL policies.

42.     As a result of the allegations in the Third Party Complaint, compared with the provisions of Mountain States' policies, Mountain States was obligated to participate in Academy's defense of the Third Party Complaint

43.     Mountain States nevertheless refused to participate in the defense of Academy.

44.     As a result of Mountain States refusal to defend, CIC has incurred defense and indemnity costs in an amount greater than its share, and is entitled to recover a proportionate share of such costs from Mountain States.

### THIRD CLAIM FOR DECLARATORY RELIEF

**(Mountain States breached its duty to defend as the Wrap Exclusion in the 2004-2005 Mountain States Policy cannot apply where the Third Party Complaint specifically alleges claims not covered by the Wrap.)**

45.     CIC incorporates paragraphs 1 through 44 above.

46.     Under Colorado law, an insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.  *Hecla Mining Co.,* 811 P.2d at 189-190.

47.     Also under Colorado law, the insurer has the burden of establishing that "the allegations in the complaint are solely and entirely within the exclusions in the insurance policy" and that any exceptions to the exclusions do not restore coverage. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 618 (Colo. 1999).

48. The Third Party Complaint alleged that KB Home's claims against Academy were specifically for damages to and defects in those properties which were completed prior to the institution of the Wrap insurance program by KB Home.

49. CIC brought these facts to the attention of Mountain States on August 28, 2015.  (Exhibit J)

50. Mountain States notified CIC that Wrap exclusion in endorsement UND 557 03/05 of the policies applied, so that Mountain States was not able to respond to the loss associated with the project, on August 31, 2015 (Exhibit K).

51. The Mountain States policy effective May 1, 2004-May 1, 2005 does not include endorsement UND 557 03/05.

52. The Mountain States policy effective May 1, 2004-May 1, 2005 includes endorsement CG 2514 01/96 which states, in its entirety:

**EXCLUSION – DESIGNATED OPERATIONS COVERED BY
A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM**
*(Endorsement CG 2154 01/96 for 2004-2005 Policy)*

This endorsement modifies insurances provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Description of Location of Operation(s):

ANY AND ALL OPERATIONS
COVERED UNDER A CONSOLIDATED
(WRAP-UP) INSURANCE PROGRAM

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE **A-** BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)**     Provides coverage identical to that provided by this Coverage Part;

**(2)**     Has limits adequate to cover all claims; or

**(3)**     Remains in effect.

53.     Pursuant to the allegations in the Third Party Complaint, Village West was not a "location described in the Schedule of this endorsement."

54.     The Wrap exclusion in the 2004-2005 policy did not apply to this case.

55.     Mountain States refusal to defend Academy under the May 2004-May 2005 policy period ignores the plain language of its own policy.

56.     Mountain States' refusal to honor its duties to its insured as to the effective policy from May 1, 2004-May 1, 2005 is contrary to Colorado law.

57.     Mountain States breached its duty to defend Academy under the 2004-2005 policy, as the claims asserted in the Third Party Complaint were not solely and entirely within the referenced exclusion of that policy.

58.     As a result of Mountain States refusal to defend, CIC has incurred defense and indemnity costs in an amount greater than its share, and is entitled to recover a proportionate share of such costs from Mountain States.

### FOURTH CLAIM FOR DECLARATORY RELIEF

### (Mountain States breached its duty to defend as the Wrap exclusion in the 2005, 2006 and 2007 Policies did not apply to the case)

59.     CIC incorporates paragraphs 1 through 58 above.

60.     Mountain States' Wrap Endorsement UND 557 03/05 was in effect for the May 2005-May 2008 policies, and states:

**EXCLUSION - DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM**

This endorsement modifies insurances provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

**SCHEDULE**

Description of Location of Operation(s):

**ANY AND ALL CONSOLIDATED (WRAP-UP) INSURANCE PROGRAMS WHICH YOU HAVE BEEN, ARE OR WILL BE COVERED UNDER, AT ANY AND ALL LOCATIONS.**

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE **A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section **I** - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)**     Provides coverage identical to that provided by this Coverage Part;

**(2)**     Has limits adequate to cover all claims; or

**(3)**     Remains in effect.

61.     The Third Party Complaint specifically alleges construction defects and damages which are not and never were covered by KB Home's Wrap policy.

62.     Subsections **(1)** and **(2)** of the Wrap exclusion do not relieve Mountain State of its duty to defend Academy since the Third Party Complaint alleges the claims pertain to those units that were completed before the Wrap became effective.

63.     Subsection **(3)** of the exclusion appears to state that coverage does not apply to "property damage" . . . .at any location where Academy has been, is or will be covered under a wrap.

64.     Subsection **(3)** of the Wrap exclusion does not apply to the case, because the Third Party Complaint specifically alleges claims arising out of locations where a Wrap *had not been* provided by KB Home.

65.     Alternatively, the Wrap exclusion in the 2005-2008 policies are ambiguous.

66.     An insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation. *Hoang v. Assur. Co. of Am.,* 149 P.3d 798 (Colo. 2007).

67.     Ambiguous contract language "must be construed in favor of the insured and in favor of providing coverage to the insured, and against the insurer who drafted the policy." *Public Serv. Co. v. Wallis & Cos.*, 986 P.2d 924 (Colo. 1999).

68.     Mountain States breached its duty to defend Academy under the 2005, 2006 and 2007 policies, as the allegations of the Third Party Complaint were not solely and entirely within the wrap exclusion of those policies.

69.     Alternatively, the Wrap Exclusion is ambiguous, and the language should be constructed in favor of Academy, and in favor of coverage.

70.     Mountain States nevertheless refused to participate in the defense of Academy.

71.     As a result of Mountain States refusal to defend, CIC has incurred defense and indemnity costs in an amount greater than its share, and is entitled to recover a proportionate share of such costs from Mountain States.

## FIFTH CLAIM FOR DECLARATORY RELIEF

### (CIC is entitled to contribution for defense and settlement costs from Mountain States)

72.     CIC incorporates paragraphs 1 through 71 above.

73.     Mountain States has refused to honor its contractual obligations in failing and refusing to defend Academy and participate in settlement of the Third Party Complaint in the Underling Matter.

74.     CIC voluntarily paid more than its share of defense cost and settlement of the claims asserted in the Third Party Complaint in the Underling Matter.

75.     CIC is entitled to contribution from Mountain States of those defense costs and settlement payments.  *See, Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.,* 833 P.2d 741, 748 (Colo. 1992).

76.     To relieve Mountain States of an obligation to contribute "would be to reward insurer for refusing to honor its contractual obligations by failing to defend a lawsuit brought against the insured that falls within the terms of the policy.  *Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.,* 833 P.2d at 747.

77.     CIC is entitled to recover those defense fees, costs and loss incurred and paid on behalf of Mountain States in the defense and settlement of the Third Party Complaint.

78.     CIC is also entitled to contribution under the "other insurance" clause in Mountain States policy. The other insurance clause provides for contribution in the event that other valid and collectible insurance applies to the loss on the same basis. *Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.,* 833 P.2d at 748.

## SIXTH CLAIM FOR DECLARATORY RELIEF

### (Mountain States waived all other coverage defenses)

79.     CIC incorporates paragraphs 1 through 78 above.

80.     Mountain States refused to defend Academy and participate in settlement based only on the basis of the claimed application of the Wrap exclusion of the Mountain States policies.

81.     Under Colorado law, an insurer must reserve all defenses to coverage within a reasonable time after learning of such defenses or those defenses may be deemed waived or the insurer may be estopped from raising them. *Colard v. American Family Mut. Ins. Co.*, 709 P.2d 11, 15 (Colo. App. 1985); *Flatiron Paving Co. v. Great Sw. Fire Ins. Co*., 812 P.2d 668, 671 (Colo. App. 1990) *United States Fid. & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 210 n.3 (Colo. 1992).

82.     When an insurer denies coverage on specific grounds it waives the right later to assert additional defenses to coverage. *Pub. Serv. Co. of Colorado v. Wallis & Cos.,* 955 P.2d 564, 571 (Colo. App. 1997), *rev'd on other grounds,* 986 P.2d 924 (Colo. 1999).

83.     An insurer waives its right to assert defenses in litigation that it did not raise when it denied liability on other grounds prior to litigation. *See Fed. Life. Ins. Co. v. Wells*, 98 Colo. 455, 56 P.2d 936 (Colo. 1936); *Colard v. Am. Family Mut. Ins. Co*., 709 P.2d 11, 15 (Colo. App.

1985).*Walker v. Am. Std. Ins. Co.*, No. 11-cv-00927-LTB, 2011 U.S. Dist. LEXIS 99169, at *6 (D. Colo. Sep. 2, 2011).

84.     Mountain States did not reserve any other defenses to coverage, at any time prior to, during or after litigation of the Third Party Action.

85.     Mountain States waived all other coverage defenses when it refused to defend, based solely on its interpretation of the policies' wrap exclusion.

86.     Mountain States waived all other defenses to its defense and indemnification obligations when it refused to participate in settlement negotiations, based solely on its interpretation of the policies' wrap exclusion.

87.     Mountain Stated waived all other defenses to its defense and indemnification obligations when it refused to engage in negotiations for contribution with CIC.

88.     As a result of Mountain States refusal to defend, CIC has incurred defense and indemnity costs in an amount greater than its share, and is entitled to recover a proportionate share of such costs from Mountain States.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

89.     CIC incorporates paragraphs 1 through 88 above.

90.     CIC conferred a benefit on Mountain States, the adverse party, in the form of voluntarily paying Mountain States' share of defense and settlement costs.

91.     Mountain States appreciated the benefit conferred.

92.     Mountain States accepted the benefit under such circumstances that it would be inequitable for it to be retained without payment of its value.

93.     CIC is entitled to recovery of Mountain States share of defense and settlement costs, along with interest on the benefit Mountain States received.  See, M*artinez v. Cont'l Enters.,* 730 P.2d 308, 317 (Colo. 1986).

## EIGHTH CLAIM FOR DECLARATORY RELIEF

### (Time on Risk)

94.     CIC incorporates paragraphs 1 through 93 above.

95.      In cases where damage is continuing and indivisible, Colorado allocates liability amongst insurers according to the time on risk method.  The total amount of damages should be divided by the total number of policy years to yield the amount of damage that is fairly attributable to each policy. *Public Serv. Co. v. Wallis & Cos.,* 986 P. 2d 924 (Colo. 1999).

96.     Upon information and belief, The Village West project began in 2004.  Academy entered into a Master Subcontract with KB Home Colorado, Inc. for "Roofing", on March 8, 2004.

97.     Academy was served with a notice of claim in June of 2013 and the Third Party Complaint was filed in November of 2013.

98.     CIC insured Academy Roofing beginning on May 1 of 2011, thus having 3 years' time on risk for the pre-wrap construction.

99.     Liberty Mutual insured Academy from May 1, 2008 through May 1, 2011, thus having 3 years' time on risk for the pre-wrap construction.

100.    Mountain States insured Academy from May 1, 2004 through May 1, 2008, thus having 4 years' time on risk for the pre-wrap construction.

101.    Liberty and CIC defended Academy and paid defense costs and indemnity/settlement costs on a 50/50 basis.

102.    CIC's share of the loss is properly calculated at 30%.

103.    Mountain States must reimburse CIC for the difference representing its share of the loss or 20% of the fees, costs and settlement/indemnity payment made on Academy's behalf.

## NINTH CLAIM FOR DECLARATORY RELIEF

### (Consequential Damages)

104.    CIC incorporates paragraphs 1 through 103 above.

105.    Under Colorado law, where a court finds that "the incident resulting in liability was covered by the policy, then in addition to the expenses which the insured incurred in defending himself against the third party, the insurer also will be liable for attorney fees from the insured's action against insurer for breach of duty to defend." *See*, *EMC Ins. Cos. v. Mid-Continent Cas. Co.*, 884 F. Supp. 2d 1147, 1176 (D. Colo. 2012).

106.    Mountain States did not discharge its duty to Academy.

107.    The incident resulting in Academy's liability was covered by Mountain States' policies.

108.    Mountain States is liable to CIC for attorney's fees and costs deriving from this action, as part of CIC's equitable contribution claim. *See*, *EMC Ins. Cos. v. Mid-Continent Cas.* Co., 884 F. Supp. 2d. at 1176.

119.    CIC seeks recovery of attorney's fees and costs incurred in pursuing this action to recover Mountain States' share of the defense and indemnity costs incurred.

**WHEREFORE,** Cincinnati Insurance Company prays for the following declarations:

1.      For a declaration that Mountain States' duty to defend Academy Roofing is determined by the four corners of the Third Party Complaint;

2.      For a declaration that the Third Party Complaint stated claims for "property damage" within the coverage grant of the Mountain States CGL policies;

3.      For a declaration that Mountain States breached its duty to defend as the Wrap Exclusion in the 2004-2005 Mountain States Policy does not apply to the case;

4.      For a declaration that Mountain States breached its duty to defend as the Wrap exclusion in the 2005, 2006 and 2007 Policies did not apply to the case;

5.      For a declaration that CIC is entitled to contribution for defense and settlement costs from Mountain States;

6.      For a declaration that Mountain States waived all other coverage defenses in relation to its duties to Academy;

7.      For a declaration that CIC is entitled to recovery of Mountain States' share of defense and settlement costs, along with interest on the benefit Mountain States received, so to prevent Mountain States' unjust enrichment;

8.      For a declaration that Mountain States must reimburse CIC for 20% of the total defense and settlement costs incurred in the Underlying Action, representing Mountains States time on risk; and

9.      For a declaration that Mountain States is liable to CIC for attorney's fees and costs deriving from this action, as part of CIC's equitable contribution claim.

        DATED:  September 14, 2016

                                Respectfully submitted,

                                By:  *s/ Kristin A. Allan*_____
                                     Wendelyn K. Walberg
                                     Kristin A. Allan
                                     WALBERG ALLAN, PLLC

8547 E. Arapahoe Road, J-248
Centennial, CO 80112
Phone:  (720) 542-3254
E-mail: kallan@walbergallan.com;
wwalberg@walbergallan.com
*Attorneys for Cincinnati Insurance Company*